**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL LEE TUSTIN,       ) | |
|         Plaintiff,        ) | Civil Action No. 2:18-505 |
|                  ) | |
| v.                  ) | Magistrate Judge Patricia L. Dodge |
|                  ) | |
| WARDEN EDWARD STRAWN,    ) | |
| DEPUTY WARDEN DONALD WAUGH, ) | |
| DEPUTY WARDEN CANIE, MAJOR   ) | |
| CRAMER, CAPTAIN LEHR, CAPTAIN ) | |
| CODDINGTON, CAPTAIN FLETCHER, ) | |
| C.O. JORDAN, CHERYL MCGAVITT,   ) | |
| and DENTIST,              ) | |
|         Defendants.     ) | |

## <u>MEMORANDUM OPINION</u>[1]

For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 104) will be granted, judgment will be entered in favor of Defendants and against Plaintiff, and the unidentified and unserved defendant will be dismissed.

### I.    Relevant Procedural History

Plaintiff, Michael Lee Tustin, brought this civil rights action pursuant to 42 U.S.C. § 1983. In the Amended Complaint (ECF No. 10), he names as Defendants the following individuals who work at the Washington County Correctional Facility ("WCCF"): Warden Edward Strawn; Deputy

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), Plaintiff and all served and identified Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. (ECF Nos. 7, 39). While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction, *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), there is no authority holding that consent is necessary from defendants who are both unserved and unidentified. Therefore, the undersigned has jurisdiction to decide dispositive motions and to enter final judgment in this case.

Warden Donald Waugh; Deputy Warden Cain;[2] Major Cramer; Captain Lehr; Captain (now Major) Coddington; Captain Fletcher; Correction Officer ("CO") Jordan; and Cheryl McGavitt[3] (who is identified as "medical staff boss") (collectively, "Defendants").

The Amended Complaint also includes as defendants an unknown "Dentist" and CO John Tustin. Plaintiff has not identified the dentist or effectuated service upon that individual. As for CO Tustin, Plaintiff previously voluntarily withdrew all claims against him. (ECF No. 52.)

The Amended Complaint sets forth a series of incidents that are alleged to have occurred when Plaintiff was a pretrial detainee housed at WCCF. Plaintiff claims that Capt. Lehr and CO Jordan used excessive force against him on March 20, 2018.  The Amended Complaint also alleges that Plaintiff was forced to see a doctor against his will the following day, on March 21, 2018. Plaintiff also asserts that his requests to see a dentist were ignored, that he encountered issues in receiving commissary, that there were a number of issues involving food service (*i.e.*, mealworms in his breakfast cereal, unsanitary lunch trays, and inadequate portions served), and that his cell lacked running water at times and was unsanitary. (ECF No. 10 at pp. 7-11.)

The Amended Complaint alleges that Defendants violated Plaintiff's rights under the First, Eighth, Thirteenth, and Fourteenth Amendments. (*Id.* at p. 4.) After Defendants filed a partial motion to dismiss (ECF No. 28), the Court granted their motion in part and dismissed Plaintiff's causes of action under the First and Thirteenth Amendments. (ECF No. 41.)

Following the close of discovery, the Court issued an order (ECF No. 101) that set forth the schedule for summary judgment motions. The Court advised Plaintiff at that time of the

---

[2] Plaintiff misspelled Deputy Warden Cain's name. The Court uses the correct spelling.
[3] Cheryl McGavitt is a Registered Nurse. (ECF No. 107-4, Defs' Ex. D, ¶ 1.)

requirements for opposing summary judgment under Federal Rule of Civil Procedure 56 and this Court's Local Rules 56.C and 56.E.

Now pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 104; *see also* Defs' Brief, ECF No. 105). They have filed a Concise Statement of Material Facts[4] (ECF No. 106), which is supported by the declarations of Capt. Lehr (ECF No. 107-2, Defs' Ex. B), CO Jordan (ECF No. 107-3, Defs' Ex. C), and CO Kyrie Kenyon (ECF No. 107-1, Defs' Ex. A), who are the three individuals who were involved in the alleged excessive force incident. Additionally, Defendants have provided declarations by Major Coddington (ECF No. 107-30, Defs' Ex. F) and Nurse McGavitt (ECF No. 107-4, Defs' Ex. D). Attached to McGavitt's declaration are relevant medical records. (ECF Nos. 107-5 through 107-28). Defendants also submitted the psychological evaluation prepared by Michael Crabtree, Ph.D, for the purpose of determining his competency in connection with his criminal trial. (ECF No. 107-29, Defs' Ex. E.)

Plaintiff filed two responses to Defendants' Motion for Summary Judgment. His first response (ECF Nos. 108, 112) did not dispute or respond to Defendants' Concise Statement of Material Facts or attach any evidence in support of any of his claims.

After Plaintiff submitted his first response, the Court issued an order (ECF No. 111) in which it once again advised him of the requirements of opposing a motion for summary judgment. The Court provided Plaintiff with the opportunity to file a supplemental response and explained that he should file one if he had any materials that he wanted the Court to consider in evaluating

---

[4] In their otherwise properly supported Concise Statement of Material Facts (ECF No. 106), Defendants purport to incorporate by reference the facts set forth in a concise statement of material facts filed by their counsel in *Tustin v. Warden Strawn, et. al.*, No. 19-cv-06. The Court did not consider that document in evaluating Defendants' Motion for Summary Judgment in this case.

his opposition to Defendants' Motion. Plaintiff subsequently filed a supplemental response (ECF No. 115), but it did not cure the deficiencies of his first response.

In both of Plaintiff's responses he asks that the Court consider "affidavits" and other purported evidence that he previously submitted in this action. The Court is under no obligation to search for evidence that would create a factual dispute. Because Plaintiff is proceeding *pro se*, however, the Court has reviewed the docket in an attempt to locate the documents to which he may be referring in order to ascertain whether they create genuine issues of material fact.

During the discovery phase of this litigation, Plaintiff submitted documents that he identified as "affidavits" or "motions" in which he made assertions about various Defendants, challenged evidence gathered in discovery, and summarized testimony he maintained certain witnesses could provide. (ECF Nos. 75, 79-82, 84-86).[5] None of these documents were sworn or declared to be true under penalty of perjury in accordance with 28 U.S.C. § 1746. Therefore, they do not qualify as evidence that the Court can consider in evaluating Plaintiff's opposition to summary judgment.[6] Fed. R. Civ. P. 56(c)(4); *see, e.g., United States ex rel. Doe v. Hart Sol., P.C.*, 923 F.3d 308, 315-16 (3d Cir. 2019) (unsworn statements cannot raise an issue of fact so as to preclude summary judgment).

---

[5] Some of the information contained in those submissions contain allegations about incidents that are not at issue in this case.

[6] Plaintiff attached his medical records to some of those submissions. (ECF No. 75-1 at pp. 2-3; ECF No. 82-3 at pp. 1-2.) Defendants also produced those records as attachments to Nurse McGavitt's declaration. (ECF Nos. 107-22, 107-27, and 107-28, Def's Ex. D, Attachs. 18, 23, 24) and the Court has considered them. They do not demonstrate that there is a disputed fact about a material issue in this case.

Thus, Plaintiff did not respond to or refute Defendants' Concise Statement of Material Facts or submit any evidence in opposition to the motion for summary judgment.[7] As a consequence, and in accordance with the applicable procedural rules, this Court has treated the facts stated in Defendants' Concise Statement of Material Facts as undisputed for the purpose of resolving their Motion for Summary Judgment. Fed. R. Civ. P. 56(e)(2); Local Rule 56.E; *see, e.g., Hughes v. Allegheny Cnty Airport Authority*, No. 15-cv-221, 2017 WL 2880875, *1-2 (W.D. Pa. July 6, 2017).

Moreover, in Plaintiff's two responses to Defendants' Motion, he only addresses his excessive force claim. He does not discuss his other claims or otherwise indicate that he opposes Defendants' contention that they are entitled to judgment as a matter of law with respect to these claims. For these reasons, the Court construes Plaintiff's responses as indicating that he has either abandoned his other claims or does not oppose Defendants' Motion with respect to them. Nevertheless, the Court has addressed all of Plaintiff's claims in order to explain why the entry of summary judgment in favor of Defendants is appropriate.

---

[7] The Court also notes that although a party may not rest on his or her pleadings to create a fact issue sufficient to survive summary judgment, allegations that are based upon personal knowledge and which are contained in a verified complaint (ordinarily not required under the Federal Rules of Civil Procedure) may be used to oppose a motion for summary judgment because it can be treated as an affidavit or declaration. *See, e.g., Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985). Plaintiff's Amended Complaint was neither sworn nor signed under penalty of perjury and, therefore, the Court cannot treat it as the equivalent of an affidavit or declaration in opposition to Defendants' Motion for Summary Judgment. *See, e.g.,* Ziegler v. Eby, 77 F. App'x 117, 120 (3d Cir. 2003); 11 MOORE'S FEDERAL PRACTICE-CIVIL § 56.94[2A], Lexis (database updated June 2020) ("A verified pleading may serve as an affidavit or declaration for purposes of summary judgment to the extent that it meets the requirements for summary judgment affidavits and declarations discussed above. However, an unverified pleading may not be used as summary judgment evidence.")

## II.     Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*; *see, e.g., Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, then the burden going forward shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty Family*

*YMCA*, 418 F.3d 265,266 (3d Cir. 2005); *Doe v. Cnty of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

## III. Discussion

### A.    The Unidentified and Unserved Defendant

The Amended Complaint lists as a defendant an unnamed individual identified only as "Dentist." (ECF No. 10 at p. 6.) The use of fictitious defendants is permissible "until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cnty*, 336 F. App'x 248, 250 (3d Cir. 2009). Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." *See also Parker v. United States*, 197 F. App'x 171, 173 n. 1 (3d Cir. 2006) (affirming dismissal of John Doe defendants where "[d]espite ample opportunity to do so, the John Doe defendants were never identified and served with the complaint"). "[I]n the adversarial system of litigation the plaintiff is

responsible for determining who is liable for [his] injury." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 212 (3d Cir. 2006) (citation omitted). Thus, fictitious parties should be dismissed if they are left unidentified at the close of discovery. *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). As a result, if a plaintiff fails to amend the complaint identifying the unnamed fictitious defendants, a court may dismiss those defendants before ruling on a summary judgment motion. *Blakeslee*, 336 F. App'x at 250.

Plaintiff has never amended the complaint to properly identify and serve the unnamed Dentist, and discovery has now closed. Accordingly, that defendant will be dismissed from this action.

B.     Plaintiff's Claims Against the Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, § 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

1.     *Excessive Force Claim Against Defendants Lehr and Jordan*

(a)     Factual Background

Plaintiff claims Captain Lehr and CO Jordan used excessive force against him on March 20, 2018. According to the allegations of the Amended Complaint, approximately five hours before the incident in question, Plaintiff had an accident during which he injured his head, causing it to bleed. (ECF No. 10 at p. 8.) Several hours later, a female officer observed blood in

his cell and asked him what happened. Plaintiff ignored her question. Captain Lehr and CO Jordan then arrived on the scene, entered Plaintiff's cell, and the alleged excessive force incident occurred. (*Id.*)

The summary judgment record establishes, without contradiction, that the March 20, 2018 incident occurred when Plaintiff was housed in the WCCF's Medical Clinic. (ECF No. 106, ¶ 1.) CO Kyrie Kenyon, who was passing out dinner trays at the time, was the officer who observed the presence of blood in Plaintiff's cell. (*Id.*, ¶¶ 1-3.) Plaintiff was lying on his bed, facing away from CO Kenyon, and was covered with a blanket. He refused her requests to cooperate and turn over so that she could check to see if he was injured. (*Id.*, ¶¶ 2, 4-5.) Pursuant to WCCF policy CO Kenyon notified Capt. Lehr of the situation. (*Id.*, ¶ 6.)

Capt. Lehr and CO Jordan responded and ordered Plaintiff to show them his face and remove the blanket that was covering it. (*Id.*, ¶ 7.) Capt. Lehr and CO Jordan entered Plaintiff's cell after he refused to comply with their order. (*Id.*, ¶¶ 8-9.) Plaintiff physically resisted Capt. Lehr's efforts to pull the blanket off of him. (*Id.*, ¶ 10.) In his declaration, Capt. Lehr states that throughout the incident he was giving Plaintiff orders to stop resisting and release the blanket so that they could examine him for any injuries. (ECF No. 107-2, Defs' Ex. B, ¶ 8.) Capt. Lehr and CO Jordan had to wrestle with Plaintiff because he continued to refuse to cooperate and physically resisted their efforts to examine his wounds. (*Id.*, ¶ 9.) Capt. Lehr and CO Jordan were able to restrain Plaintiff enough to place him into handcuffs and shackles for the safety of all involved. (*Id.*) In their declarations, CO Jordan and CO Kenyon provided descriptions of the incident that are consistent with that provided by Capt. Lehr. (ECF No. 107-1, Defs' Ex. A, ¶¶ 11-18; ECF No. 107-3, Defs' Ex. C, ¶¶ 3-8.)

Capt. Lehr and CO Jordan escorted Plaintiff to the clinic for a medical examination. (ECF No. 106, ¶ 13.) Plaintiff received treatment for a laceration he had on his forehead. During his examination Plaintiff stated that he had intentionally hit his head off of a wall. (*Id.*, ¶¶ 14-15; *see also* ECF No. 107-4, Defs' Ex. D, ¶¶ 34-36.) That behavior is consistent with other behavior documented in Plaintiff's medical and psychiatric records, which reflect that he has a history of self-injury during his incarceration. (*Id.*, ¶ 22.) Upon the completion of his examination Plaintiff was returned to his cell and placed on suicide watch. (*Id.*, ¶ 15).

Plaintiff's medicals records indicate that he did not complain of hand or wrist injuries when he received medical treatment immediately after the incident on March 20, 2018 or when he spoke with a doctor the following day, on March 21, 2018. (*Id.*, ¶¶ 19, 47.) The doctor who saw Plaintiff on March 21, 2018 wrote in his notes that he observed "no obvious, severe, injury" to Plaintiff's head. (ECF No. 107-25, Defs' Ex. D, Attach. 21.)

The following month, on April 25, 2018, Plaintiff requested to be seen by a doctor for a bump on his right wrist. (ECF No. 106, ¶ 48.) X-rays were taken of that wrist on or around April 27, 2018 and they revealed it was not dislocated or fractured. (*Id.*, ¶ 50; *see also* ECF No. 107-4, Defs' Ex. D, ¶ 41.)

(b)     Discussion

The Eighth Amendment and its prohibition against punishment that is "cruel and unusual" is not applicable to this case. Rather, because Plaintiff was a pretrial detainee at the time of all alleged events in this action, his claims relating to excessive force, dental care, and other conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, which protects a pretrial detainee against "punishment." *Hubbard v. Taylor*, 399 F.3d 150, 158-67 (3d

10

Cir. 2005) ("*Hubbard I*") (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)); *see, e.g., Bistrian v. Levi*, 696 F.3d 352, 372-75 (3d Cir. 2012); *Murray v. Keen*, 763 F. App'x 253, 255 (3d Cir. 2019) ("sentenced prisoners are protected from only punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment.") (citing *Hubbard I*, 399 F.3d at 166-67).

In making the determination of whether a challenged condition of confinement amounts to a punishment of a pretrial detainee, "'[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*") (quoting *Bell*, 441 U.S. at 538). "[C]onditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster." *Bristrian*, 696 F.3d at 373 (citing *Bell*, 441 U.S. at 540). In contrast, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Id.* (internal quotations and citations omitted); *see also Hubbard II*, 538 F.3d at 232.

With respect to Plaintiff's excessive force claim, the Fourteenth Amendment "'protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Robinson v. Danbert*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley v. Henrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473 (2015), which quoted *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). "To demonstrate a due process violation, a detainee must prove 'that the force purposely or knowingly used against him was objectively unreasonable,' meaning 'that the actions [were] not 'rationally related to a legitimate nonpunitive government purpose.'" *Id.* (quoting *Kingsley*, 135

S. Ct. at 2473, which quoted *Bell*, 441 U.S. at 520).

The following six "*Kingsley* factors" are considered when evaluating a pretrial detainee's excessive force claims: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Id.* (quoting *Kingsley*, 135 S. Ct. 2473).

No rational factfinder applying those six factors to the uncontroverted evidence in the summary judgment record could find in favor of Plaintiff. He admitted that he injured his head several hours before the incident by hitting it against a wall. After Capt. Lehr and CO Jordan were alerted that Plaintiff appeared to be injured, they directed Plaintiff to remove the blanket that was covering him so that they could examine his injury. Plaintiff refused to comply with their directives and physically resisted their efforts to check his wound. Therefore, the need for and the use of some force to attempt to restrain Plaintiff was necessary in this situation. There is no basis in the record for concluding that the amount of force used by Capt. Lehr and CO Jordan was excessive.

In his responses to Defendants' summary judgment motion, Plaintiff asserts that his wrist was "mangled" during the incident. (ECF Nos. 112, 115.) He has provided no evidence to support that assertion. The evidence contained in the summary judgment record demonstrates that Plaintiff received treatment for issues he was experiencing with his right wrist in February 2018, approximately one month before the incident; one month after the incident, in April 2018; and then again in early June 2018. (ECF No. 106, ¶¶ 43-53.) There is no evidence that Plaintiff's wrist was fractured, severely injured or injured at all during the March 20, 2018 incident, or that he sustained

any other type of serious injuries during this incident.

Based upon the foregoing, there is no genuine issue of material fact related to Plaintiff's excessive force claim. Therefore, summary judgment will be granted in favor of Capt. Lehr and CO Jordan.

2.    *Allegations Against Defendant Coddington Regarding Plaintiff Being Forced to See a Doctor*

A mentally competent person has a right under the Fourteenth Amendment's Due Process Clause to refuse medical treatment. *Cruzan by Cruzan v. Director, Mo., Dep't of Health*, 497 U.S. 261, 277-78 (1990). The right to refuse treatment extends to prisoners but it may be restricted for a valid reason. *See, e.g., Washington v. Harper*, 494 U.S. 210, 221-28 (1990) (applying the standard of *Turner v. Safley*, 482 U.S. 78 (1987) to an inmate's claim that he was forced to take antipsychotic drugs); *White v. Napoleon*, 897 F.2d 103, 112, 113 (3d Cir.1990) (inmate's right to refuse treatment may be overcome "when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objections."); *Russell v. Richards*, 384 F.3d 444, 447-48 (7th Cir. 2004) (applying *Turner* standard to a jail's requirement that prisoners newly admitted use a delousing shampoo); *see also* 1 Rights of Prisoners § 4:38-39, Right to refuse treatment (5th ed.) (Westlaw, current through Sept. 2019).

The Amended Complaint alleges that Plaintiff was forced to see a doctor against his will on March 21, 2018. (ECF No. 10 at pp. 8, 10.) Major Coddington is the only defendant alleged to have been involved in this claim. (*Id.*)

The doctor in question is Dr. Allison,[8] who saw Plaintiff the day after the March 20, 2018

---

[8] Dr. Allison is not a defendant in this action.

13

incident in order to check on his head injury. (ECF No. 106, ¶ 16.) Dr. Allison wrote in his notes

that he observed "no obvious, severe, injury" to Plaintiff's head. (ECF No. 107-25, Defs' Ex. D,

Attach. 21.) He further wrote that his examination was limited due to Plaintiff's lack of

cooperation. Plaintiff "shook his head aggressively when" Dr. Allison "tried to do any further"

head, ears, eyes, nose, and throat examination, and Plaintiff would not answer any questions that

Dr. Allison posed to him. (*Id.*) Plaintiff also refused the nurse's offer to cleanse and dress his head

wound. (*Id.*; *see also* ECF No. 106, ¶ 18.)

Defendants argue that Major Coddington is entitled to summary judgment on this claim

because Plaintiff failed to adduce evidence to support any cause of action against him. They are

correct. The uncontroverted evidence of record demonstrates that Plaintiff was not subjected to

unwanted medical treatment when he was seen by Dr. Allison on March 21, 2018. Indeed, the

evidence establishes that Plaintiff refused treatment for his head wound and that the nurse and Dr.

Allison complied with his wishes and did not treat his wound. Additionally, there is no evidence

that Plaintiff was given any medication, drugs, or subject to any medical procedure during this

doctor's visit.[9]

Thus, judgment will be entered in favor of Major Coddington on Plaintiff's claim that he

was forced to see a doctor against his will on March 21, 2018. There is no evidence in the record

from which a reasonable jury could conclude that Plaintiff was subjected to a constitutional

violation on that date.

---

[9] To the extent that Dr. Allison's limited examination of Plaintiff amounted to "treatment"—and
Plaintiff has not demonstrated that it did—officials at WCCF had a legitimate interest in having
him seen by a doctor on March 21, 2018 in order to check on the head injury he had sustained the
previous day.

3.     *Allegations Regarding Plaintiff's Dental Care*

The Amended Complaint alleges that from February 20, 2018 through April 20, 2018 Plaintiff's requests to see a dentist were ignored. (ECF No. 10 at pp. 7-8.) Plaintiff alleges that his tooth was eventually extracted but in the interim he experienced pain and had difficulty chewing. (*Id.*) He does not specify which Defendants were involved in this claim. For the purpose of ruling upon Defendants' summary judgment motion the Court has assumed that Plaintiff is bringing this claim against all Defendants.

Prisoners have a right to adequate medical care. In *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) the Supreme Court held that "deliberate indifference to a serious medical need of prisoners constitutes the 'unnecessary and wonton infliction of pain'...proscribed by the Eighth Amendment." *Id.* at 104. As previously explained, because Plaintiff is a pretrial detainee, his right to medical care is protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See, e.g., Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Nevertheless, courts apply the Eighth Amendment's deliberate indifference legal standard when evaluating the medical-care claims of pretrial detainees. *Id.*; *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019); *Edwards v. Northampton Cnty*, 663 F. App'x 132, 135 (3d Cir. 2016); 1 Rights of Prisoners § 4:3, Rights of pretrial detainees to medical care ("There seems no real reason to distinguish the medical needs of inmates from those of detainees.")

Under that standard Plaintiff must prove two things. First, he must make an objective showing that his medical needs were serious. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Second, Plaintiff must make a subjective showing that a defendant was deliberately

indifferent to his serious medical need. *See, e.g., Rouse,* 182 F.3d at 197. The Supreme Court has

described the state of mind that deliberate indifference requires as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying
> an inmate humane conditions of confinement unless the official knowns of and
> disregards an excessive risk to inmate health or safety; the official must be both
> aware of facts from which the inference could be drawn that a substantial risk of
> serious harm exists, and he also must draw that inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants assert that Plaintiff cannot come forward with any evidence to create a triable

issue of fact on this claim. They point to the undisputed evidence in the record which demonstrates

that he received extensive dental care while at WCCF. For example, in 2017 Plaintiff was seen by

the facility's dentist on numerous occasions, had multiple teeth pulled, and received treatment for

facial cellulitis and a dental abscess. (ECF No. 106, ¶¶ 24-31.) On April 10, 2018 Plaintiff was

seen by a dentist and a tooth was extracted on that date. (*Id.*, ¶ 35.) There is no evidence that

Plaintiff submitted any request to see a dentist between February 20, 2018 and April 20, 2018, or

that any defendant (or anyone else working at WCCF for that matter) ever ignored a request made

by Plaintiff to see a dentist.

Accordingly, because there is a complete absence of any evidentiary support for Plaintiff's

claim that he was denied or delayed dental care, Defendants are entitled to summary judgment on

this claim.

    4.    *Allegations Concerning Denial of Commissary*

The Amended Complaint asserts that Plaintiff filled out eight separate commissary orders

that were either not fulfilled entirely or fulfilled at all. (ECF No. 10 at p. 10). Because Plaintiff

does not specify which Defendants were involved in this claim, the Court once again has assumed

for the purpose of ruling upon Defendants' summary judgment motion that he is bringing this

claim against all Defendants.

The evidence in the record shows that during most of the time Plaintiff was housed at the WCCF he was under Protective Custody, which is provided at an inmate's request when he feels that for his personal security and safety he cannot be in the general population. (ECF No. 106, ¶¶ 54-55.) An inmate in Protective Custody is designated to specialized areas of the WCCF including the Medical Clinic or Special Housing Unit. (*Id.*, ¶ 56.) Inmates housed in those areas are not permitted to receive commissary. (*Id.*, ¶¶ 57-58.) That is why he did not receive any commissary when Plaintiff was in Protective Custody at the WCCF. (*Id.*, ¶ 59.)

In any event, as Defendants assert, Plaintiff has no federal constitutional right to purchase commissary items. *See, e.g., Tokar v. Armontrout*, 97 F.3d 1078, 1080 (8th Cir. 1996) ("we know of no constitutional right of access to a prison gift or snack shop."); *Nesmith v. Beaver Cnty Jail*, No. 11-cv-388, 2012 WL 3245495, *9 (W.D. Pa. Aug. 8, 2012) (collecting cases and explaining that this Court "has consistently held that inmates have no federal constitutional right to be able to purchase items from a commissary[.]") (internal quotations and citations omitted).

Thus, Plaintiff has failed to demonstrate that he has a cognizable claim for relief under § 1983 premised upon the alleged issues he was having with the commissary and Defendants will be granted summary judgment on this claim for that reason.

5.     *Allegations Concerning Food Service and Quality*

The Amended Complaint contains allegations about the quality and portion size of the food served to Plaintiff at WCCF. It also alleges that there were mealworms in the breakfast served to him on April 6, 2018, and that on that same day his lunch tray had "slop" on it that smelled so bad Plaintiff was unable to eat. It further asserts that in December 2018 Capt. Fletcher ordered former-

Defendant Tustin not to feed Plaintiff for three days. (ECF No. 10 at pp. 10-11.)

Plaintiff has specified that Capt. Fletcher was involved in the December 2018 incident. He does not, however, identify any other Defendant as being involved in the other incidents related to his food service and quality complaints. For the purpose of ruling upon Defendants' summary judgment motion, the Court once again has assumed that Plaintiff is bringing this claim against all Defendants.

There is no question that inmates have a right to be served nutritionally adequate meals and that the deprivation of food for any substantial period of time can amount to a violation of the prisoner's federal constitutional rights. *See* 1 Rights of Prisoners § 3:51-52; *see e.g.*, *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009); *Hall v. Pierce*, No. 14-cv-890, 2019 WL 113728, *6 (M.D. Pa. Jan. 4, 2019). Additionally, Pennsylvania law requires that county jails such as WCCF provide each inmate with a daily diet that is nutritionally adequate for the maintenance of good health, that menus be approved by a registered dietician or licensed physician on an annual basis, that the food is prepared and served in a sanitary manner, and that food shall be stored and prepared in a proper manner to assure freshness and to prevent spoilage and damage from insects and rodents. 37 Pa. Code. § 95.230.

Defendants contend that they are entitled to summary judgment on Plaintiff's food-related claims because he has adduced no evidence to support them. The Court agrees. The allegations in the Amended Complaint are not evidence. The only evidence contained in the summary judgment record establishes that: (1) Plaintiff never reported that he found mealworms in his food or "slop" on his lunch tray on April 6, 2018 or at any other time; (2) no other inmate or staff member (who also consume the food prepared at WCCF) made a complaint about mealworms in the food;

(3) Plaintiff never made any complaint regarding Capt. Fletcher ordering that he not receive any food; and, (4) WCCF does not withhold food as a form of discipline. (ECF No. 106, ¶¶ 62-69.)

Thus, in the absence of any evidence to support Plaintiff's food-related claims, Capt. Fletcher and any other Defendant who may be implicated by the allegations pertaining to them are entitled to summary judgment on those claims.

5.      *Allegations Regarding the Unsanitary Conditions in Plaintiff's Cell*

The Amended Complaint asserts that the conditions in Plaintiff's cell were unsanitary and that the water in his cell was shut off for up to two weeks because of the misconduct of another inmate who would "play with his toilet" and flood his own cell. (ECF No. 10 at p. 11.) The Amended Complaint also asserts that Plaintiff was forced to eat in his cell with the toilet two feet away from him and that the odor was so bad that at times he would be unable to eat. (*Id.*) Because Plaintiff does not specify which Defendants were involved in this claim, the Court has assumed for the purpose of ruling upon Defendants' summary judgment motion that he is bringing it against all Defendants.

The uncontroverted evidence of record establishes that inmates at the WCCF, including Plaintiff, are provided cleaning materials and are responsible for keeping their own cells clean. In fact, inmates are disciplined if they refuse to clean their cells. (ECF No. 106, ¶¶ 71-72). Therefore, as Defendants persuasively argue, on those occasions when Plaintiff's cell was untidy or had a bad smell, he had the ability to remedy the situation and it was his responsibility to do so. (*Id.*, ¶¶ 71-73.)

Defendants acknowledge that there may have been occasions when the water was turned off in Plaintiff's cell due to the misconduct of another inmate in a nearby cell. (*Id.*, ¶ 76). That is

19

because there is one water source for two cells. (*Id.*, ¶ 75). However, the uncontroverted evidence establishes that on those occasions when Plaintiff's water was turned off, it would have been turned back on at Plaintiff's request any time he needed to flush his toilet or get a drink of water. (*Id.*, ¶¶ 77-78.)

Because Plaintiff has failed to adduce any evidence from which a reasonable factfinder could conclude that he was subjected to conditions of confinement in his cell that amounted to a violation of his constitutional rights, Defendants' Motion for Summary Judgment will be granted on this claim.

6.      *Lack of Personal Involvement by Defendants Strawn, Waugh, Cain, Cramer and McGavitt*

Defendants Warden Strawn, Deputy Warden Waugh, Deputy Warden Cain, Major Cramer, and Nurse McGavitt move for summary judgment on the additional ground that there is no record evidence that they had the requisite personal involvement in any of Plaintiff's claims.

The Amended Complaint indicated that Plaintiff sued each Defendant only in their individual capacity. (ECF No. 10 at pp. 3-5.) To establish personal liability against a defendant in a § 1983 action, a defendant must have personal involvement in the alleged wrongs. "It is well-recognized that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd sub. nom. on other grounds* 575 U.S. 822 (2015) (internal citations and quotations omitted). "Rather, state actors are liable only for their own conduct." *Id.* (citation omitted); *see also id.* (setting forth "the two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinate," neither of which apply in this case).

Given the absence in the record of any evidence to support a finding that Warden Strawn, Deputy Warden Waugh, Deputy Warden Cain, Major Cramer, or Nurse McGavitt had the requisite personal involvement in any of Plaintiff's claims, they are entitled to summary judgment in their favor on this basis as well.

**IV.  Conclusion**

Based upon the foregoing, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 104), enter judgment in their favor and against Plaintiff and dismiss the unidentified and unserved defendant from this action.

BY THE COURT:

Dated: June 10, 2020

PATRICIA L. DODGE
United States Magistrate Judge